UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) Case No. 1:25-cv-00664 (JMF) |
| PEPSICO, INC. | ) ) |
| *Defendant*. | ) ) ) ) |

**BRIEF OF U.S. CHAMBER OF COMMERCE AS AMICUS CURIAE
IN SUPPORT OF PEPSICO, INC.'S OPPOSITION
TO INTERVENOR'S MOTION TO UNSEAL**

August 15, 2025

Jonathan D. Urick
Matthew P. Sappington
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

Anthony J. Dick
Avery Rasmussen Phillips
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001
(202) 879-3939
ajdick@jonesday.com

*Counsel for Amicus Curiae U.S. Chamber of Commerce*

# **TABLE OF CONTENTS**

Page

INTEREST OF AMICUS CURIAE .................................................................................................. 1

INTRODUCTION .......................................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

I.      The Weight of the Presumption of Access to a Voluntarily Dismissed Complaint is Weak.................................................................................................................. 4

II.     Important Countervailing Interests Counsel Against Unsealing. ....................................... 6

        A.     Sealing Protects Businesses That Participate in FTC Investigations..................... 6

        B.     Sealing Protects the Interests of the FTC............................................................... 10

CONCLUSION............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016)........................................................................................................5

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    119 F. Supp. 3d 152 (S.D.N.Y. 2015)........................................................................................7

*FTC v. IQVIA Holdings Inc.*,
    No. 1:23-cv-06188 (S.D.N.Y. Aug. 2, 2023).......................................................................8, 11

*FTC v. Vyera Pharms., LLC*,
    No. 20-cv-00706 (S.D.N.Y. Jan. 1, 2020) ...............................................................................11

*Giannasca v. PepsiCo, Inc.*,
    No. 7:25-cv-06440 (S.D.N.Y. Aug. 5, 2025).......................................................................9, 11

*Giuffre v. Maxwell*,
    2025 WL 2055148 (2d Cir. July 23, 2025) (per curiam) ..........................................................3

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
    769 F. Supp. 2d 630 (S.D.N.Y. 2011)........................................................................................8

*In re Digital Music Antitrust Litig.*,
    321 F.R.D. 64 (S.D.N.Y. 2017) .................................................................................................8

*In re IBM Arb. Agreement Litig.*,
    76 F.4th 74 (2d Cir. 2023) ......................................................................................................4, 5

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
    97 F. Supp. 3d 485 (S.D.N.Y. 2015)..................................................................................6, 7, 8

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006).................................................................................................. 3, 6

*N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*,
    710 F. Supp. 3d 183 (S.D.N.Y. 2024).....................................................................................7, 8

*Stafford v. Int'l Bus. Machines Corp.*,
    78 F.4th 62 (2d Cir. 2023) ..............................................................................................3, 4, 6, 9

# **TABLE OF AUTHORITIES**

**Page(s)**

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995)............................................................................................. passim

**STATUTES**

15 U.S.C. § 46.......................................................................................................................7, 11

15 U.S.C. § 57b-2 ...........................................................................................................5, 7, 8, 11

Freedom of Information Act ..........................................................................................................8

Robinson-Patman Act ..............................................................................................................9, 11

**RULES**

Fed. R. Civ. P. 41............................................................................................................................5

**REGULATIONS**

16 C.F.R. § 4.10(a)...............................................................................................................7, 8, 11

**OTHER AUTHORITIES**

*Statement of Chairman Andrew N. Ferguson Joined by Comm'r Melissa
   Holyoak in the Matter of Non-Alcoholic Beverages Price Discrimination
   Investigation*, Matter No. 2210158,
   https://www.ftc.gov/system/files/ftc_gov/pdf/Pepsi-Dismissal-Ferguson-
   Statement-05-22-2025.pdf (May 22, 2025) ................................................................4, 5, 9, 10

## INTEREST OF AMICUS CURIAE[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber has an interest in the resolution of the motion to unseal in this case. The Chamber's members often are called to participate in investigations by the Federal Trade Commission ("FTC") and other government agencies, and they do so on the understanding that the sensitive competitive and commercial information they reveal will remain confidential. Unsealing will impair businesses' and the Government's ability to protect that information.

---

[1] The Chamber of Commerce of the United States of America ("Chamber") states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber. No counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

1

## INTRODUCTION

Businesses across every sector routinely participate in investigations by the FTC and other government agencies. Doing so often requires them to reveal confidential information, including pricing structures, customer lists, marketing strategies, and other trade secrets. But the FTC and Congress have assured those businesses that their sensitive information will not be exposed to the public—unless a judicial proceeding strictly necessitates it. That assurance of confidentiality protects American businesses, and it encourages cooperation to facilitate the smooth functioning of investigations.

The Institute for Local Self-Reliance ("ILSR") asks this Court to disregard those long-settled protections and unseal an already-withdrawn FTC complaint that never played a meaningful role in any court proceedings. ILSR's request is wholly unjustified. When the FTC voluntarily dismissed its case before the Court took any substantive action on the complaint, the agency effectively returned the matter to the same nonpublic posture that existed before the complaint was filed. The complaint played no role in the exercise of Article III judicial power, and, accordingly, any presumption of public access is at its weakest.

The countervailing interests at stake here easily overcome any such weak presumption of access. Unsealing the FTC's reasonably redacted complaint would reveal confidential investigatory material that courts routinely keep under seal and Congress has decided should be protected from disclosure. This would not only upset settled expectations of confidentiality, but also would deter cooperation in future investigations, thus compromising the efficiency of the FTC's investigatory function.

## ARGUMENT

The right of public access to court filings "is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Because "[f]ederal courts exercise powers under Article III that impact upon virtually all citizens" but are politically unaccountable, "public monitoring" is essential to "deter[] arbitrary judicial behavior" and ensure public "confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.* (quoting *Amodeo*, 71 F.3d at 1048).

In the Second Circuit, a three-step inquiry governs requests to unseal. "First, the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches." *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 69–70 (2d Cir. 2023) (quotation marks omitted). "Second, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document." *Id.* at 70 (quotation marks omitted). "Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.* (quotation marks omitted). Even for core judicial documents, the weight of the presumption can be significantly diminished by "events subsequent to filing," such as if the case becomes "moot." *Giuffre v. Maxwell*, 2025 WL 2055148, at *9, & n.9 (2d Cir. July 23, 2025) (per curiam) (quoting *Stafford*, 78 F.4th at 70).

3

Although a complaint is typically considered a judicial document, the weight of any presumption of access here is at its weakest because the complaint never became relevant to the exercise of any Article III power. Because the FTC decided to dismiss the case before the court took any substantive action on the complaint, the case became moot and the redacted contents of the complaint never had any bearing on any judicial act. The usual interests in public disclosure thus simply do not apply here. And critical countervailing interests—namely, businesses' interest in protecting their sensitive information and the FTC's interest in conducting efficient, cooperative investigations—counsel against unsealing.

I.  **The Weight of the Presumption of Access to a Voluntarily Dismissed Complaint is Weak.**

The "weight of the presumption of access is a function of (1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts." *Stafford*, 78 F.4th at 70 (quotation marks and alteration omitted). Where a document "played no role in the exercise of Article III judicial power," the weight of the presumption "is weaker." *Id.* (quotation marks omitted). "The locus of the inquiry is, in essence, whether the document is presented to the court to invoke its powers or affect its decisions" and in fact played a "role in the exercise of Article III judicial power." *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 85–86 (2d Cir. 2023) (quotation marks and alteration omitted).

The FTC in this case voluntarily dismissed its own complaint on the ground that the complaint was "weak" and undeserving of federal court attention. *Statement of Chairman*

4

*Andrew N. Ferguson Joined by Comm'r Melissa Holyoak in the Matter of Non-Alcoholic Beverages Price Discrimination Investigation*, Matter No. 2210158, https://www.ftc.gov/system/files/ftc_gov/pdf/Pepsi-Dismissal-Ferguson-Statement-05-22-2025.pdf (May 22, 2025) ("*Ferguson Statement*").  In such circumstances, it is as if the FTC never filed in federal court at all:  By voluntarily dismissing its complaint before the Court took any substantive action on the complaint, the FTC decided *against* "present[ing] [it] to the court to invoke its powers or affect its decisions." *In re IBM*, 76 F.4th at 86 (quotation marks omitted).  And as a general matter, Congress has determined that private parties should not have access to information collected in the FTC's nonpublic investigations.  *See* 15 U.S.C. § 57b-2(c), (f).

      The mere technical fact of filing—which the FTC voluntarily and promptly reversed—should not change that.  The FTC voluntarily dismissed its complaint "without a Court order."  Fed. R. Civ. P. 41(a)(1)(A); *see* Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), Dkt. 42.  No Article III power was invoked, and the redacted information in the complaint was never "used in the performance of Article III functions." *Amodeo*, 71 F.3d at 1048.  The redacted information in the complaint is therefore not relevant to monitoring federal courts or deterring arbitrary judicial behavior.  Indeed, the FTC's redactions preserve public access to the complaint itself, thus "allow[ing] the public to discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed"—the portions of a complaint that remain relevant to the public monitoring function after a suit is settled or dismissed. *Bernstein v.*

*Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016).

In short, the redacted information in the FTC's voluntarily dismissed complaint "play[ed]," at most, "only a negligible role in the performance of Article III duties." *Lugosch*, 435 F.3d at 121 (quotation marks and alteration omitted). Accordingly, the weight of any presumption of public access to that information is weak. *Id.*; *see also Stafford*, 78 F.4th at 70.

## II. Important Countervailing Interests Counsel Against Unsealing.

Where "the weight of the presumption is low," the presumption "amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo*, 71 F.3d at 1050. "[C]ountervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (quotation marks omitted).

Both of those critical countervailing interests strongly counsel against unsealing the FTC's complaint. Redactions are necessary to protect businesses' interests in sensitive confidential information and to safeguard the Government's interest in the efficient functioning of its investigations through cooperation with both targets and third parties.

### A. Sealing Protects Businesses That Participate in FTC Investigations.

Businesses that participate in FTC investigations have significant privacy interests in maintaining redactions that protect their sensitive business information. In the course of FTC investigations, businesses are asked to reveal a wide variety of confidential information, including sensitive competitive information such as pricing and marketing strategies. The FTC assures businesses that such information will be kept confidential

6

because it recognizes that, if "specific business information and strategies [are] revealed" to the public, it "may provide valuable insights into a company's current business practices that a competitor would seek to exploit." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (quotation marks omitted). Thus, businesses have "legitimate privacy interests" in their "confidential business [i]nformation." *Id.*

The privacy interest in sensitive business information belongs not only to the business subject to an FTC investigation, but also to third-party witnesses and businesses that participated or were implicated in the investigation. Indeed, in many cases involving unsealing an FTC complaint, third parties will have no notice and thus no opportunity to explain (much less make a specific showing) why a disclosure of confidential information would harm them. Such "privacy interests of innocent third parties should weigh heavily in [the] court's balancing equation." *Amodeo*, 71 F.3d at 1050 (quotation marks and alterations omitted); *see, e.g., Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156–57 (S.D.N.Y. 2015) (permitting redaction of "information concerning [third parties'] trading strategies, objectives, and transactions" and "pricing information").

Businesses—both parties and non-parties—willingly participate in FTC and other agency investigations on the express understanding that when they disclose confidential information, it will be protected. The FTC provides businesses with assurances of confidentiality for "trade secret" and other "commercial or financial information." 15 U.S.C. § 57b-2(c); *see also id.* § 57b-2(f); *id.* § 46(f); 16 C.F.R. § 4.10(a). And courts routinely permit redactions jof confidential business information as well. *See, e.g., N. Star*

7

*IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183, 211 (S.D.N.Y. 2024) (permitting redaction of "financial records and business strategies"); Order Granting Motion to Seal, Dkt. 90, *FTC v. IQVIA Holdings Inc.*, No. 1:23-cv-06188 (S.D.N.Y. Aug. 2, 2023) ("confidential business information gathered during the Commission's non-public investigation"); *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017) ("internal pricing strategies and competitive pricing data"); *Louis Vuitton*, 97 F. Supp. 3d at 511 ("specific business information and strategies"); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) ("marketing strategies, product development, costs and budgeting").

In this case, ILSR's reasons for seeking access to sensitive business information redacted from the complaint cannot overcome those vital privacy interests. ILSR speculates that the communities it serves might be "the victims" of the acts alleged in the FTC's complaint, and so it argues it is "entitled to an opportunity to review the Complaint to understand how the alleged scheme has impacted them." Mot. to Intervene at 7, Dkt. 46; *see also id.* at 9 (seeking to "understand[] the full scope and nature of the alleged scheme … and how ILSR's stakeholders were impacted"). But Congress and the Executive, in their policymaking judgment, have already rejected that kind of general public access to FTC investigations. Congress has provided that "[a]ny material" from "any [FTC] investigation … shall not be required to be disclosed" to private parties under the Freedom of Information Act "or any other provision of law." 15 U.S.C. § 57b-2(f)(1); *see also* 16 C.F.R. § 4.10(a) (protecting "competitively sensitive information" in FTC investigations from disclosure under FOIA). And although the confidentiality of FTC

8

investigations may yield when disclosure is required in judicial proceedings, *see* 15 U.S.C. § 57b-2(d)(1)(C), that exception is not implicated where the FTC exercised its judgment to voluntarily dismiss its complaint before substantive judicial proceedings began on the ground that such proceedings were unwarranted. *See Ferguson Statement* at 1–2. This Court should not allow the intervenors to use unsealing of such a complaint as "a legal loophole," *Stafford*, 78 F.4th at 71, to evade Congress's and the FTC's considered judgment of confidentiality.

In addition, "without vigilance, courts' files might become a vehicle for improper purposes." *Stafford*, 78 F.4th at 71 (quotation marks omitted). Where the FTC has decided that its allegations lack merit, *see Ferguson Statement* at 1–2, private intervenors should not be permitted to unseal information from the FTC's otherwise-nonpublic investigation for the purpose of aiding their own private lawsuits. *Cf.* Complaint, Dkt. No. 1, *Giannasca v. PepsiCo, Inc.*, No. 7:25-cv-06440 (S.D.N.Y. Aug. 5, 2025) (filing class-action lawsuit against PepsiCo for alleged violation of Robinson-Patman Act one day after ILSR's motion to unseal). "Such efforts to evade the confidentiality provision" in FTC regulations for use "in the litigation" of other claims "are a strong countervailing consideration against unsealing." *Stafford*, 78 F.4th at 71.

Finally, the unreliability of the information in the FTC's voluntarily dismissed complaint further counsels against unsealing. *See Amodeo*, 71 F.3d at 1051; *Stafford*, 78 F.4th at 70. "Raw, unverified information should not be as readily disclosed as matters that are verified," particularly where there is no "fair opportunity for the subject to respond to any accusations contained therein." *Amodeo*, 71 F.3d at 1051. The allegations in the

9

FTC's complaint are not only wholly untested and unverified, the FTC itself has determined that there is "no evidence to support" them and that they were lodged "for nakedly political purposes." *Ferguson Statement* at 1–2. And because the complaint was voluntarily dismissed before it was answered, the investigated business and implicated third-party businesses were not afforded a fair opportunity to defend themselves against those allegations in court.

For those reasons, the privacy interests of businesses involved in or implicated by the FTC's investigations weigh strongly against unsealing the FTC's redactions of business information. And in this case, the reasons for requesting access and the unreliability of the information further counsel against unsealing the complaint.

### B.    Sealing Protects the Interests of the FTC.

The FTC likewise has an important interest in maintaining redactions of business information in complaints that it files: Such redactions are critical to facilitating the efficient operation of its investigations by encouraging cooperation. Thus, the interest in avoiding "the danger of impairing law enforcement … efficiency" strongly weighs against unsealing here. *Amodeo*, 71 F.3d at 1050.

FTC investigations are more efficient with "the voluntary cooperation of [businesses] who may want or need confidentiality." *Id.* "If that confidentiality cannot be assured, cooperation will not be forthcoming." *Id.* Namely, if businesses doubt the FTC's ability to keep their sensitive information secure from competitors, they will be incentivized to fight tooth and nail to avoid disclosing that information to the FTC. In addition, without assurance that sensitive information will remain sealed if the FTC decides

not to pursue a case, businesses will be less likely to cooperate with FTC investigations because doing so opens them up to private litigation—even where the FTC has decided that the allegations lack merit. *See, e.g.*, Complaint ¶¶ 47, 60–69, Dkt. No. 1, *Giannasca*, No. 7:25-cv-06440 (Aug. 5, 2025) (bringing class-action suit against PepsiCo for alleged violation of Robinson-Patman Act based on "allegations that are substantially similar" to those in the FTC's voluntarily dismissed complaint). The incentive to resist cooperation will be especially strong for third-party businesses, which may wish to keep the fact of their participation private to guard against retaliation. If third-party businesses "anticipate that their cooperation will likely become a matter of public knowledge, valuable cooperation might cease." *Amodeo*, 71 F.3d at 1052.

Perhaps for those reasons, the FTC provides businesses with robust assurances of confidentiality. *See* 15 U.S.C. § 46(f); *id.* § 57b-2(c), (f); 16 C.F.R. § 4.10(a); *supra* at 7–8. In federal court, moreover, the FTC frequently redacts its complaints and defends those redactions. *See, e.g.*, Complaint, Dkt. No. 1, *FTC v. IQVIA Holdings Inc.*, No. 1:23-cv-06188 (S.D.N.Y. Jul. 18, 2023) (redacted); Order, Dkt. No. 112 (Aug. 16, 2023) (granting FTC's motion to maintain redactions of "commercially and competitively sensitive" business information obtained in "non-public investigation"); Complaint, Dkt. No. 4, *FTC v. Vyera Pharms., LLC*, No. 20-cv-00706 (S.D.N.Y. Jan. 1, 2020) (redacted); Joint Motion to Seal at 3, Dkt. No. 38 (Feb. 18, 2020) (moving to maintain redactions of "commercially and competitively sensitive nonpublic information" about "product sales, contracts, pricing information, and business processes").

Overly aggressive unsealing requirements also may lead the FTC to alter its civil-enforcement practices. If the FTC believes it will be unable to keep confidential information redacted, it may hesitate to include such information in a complaint for fear of deterring cooperation with investigations. Or it may seek out a jurisdiction where it believes the sealing standards are more forgiving. The FTC should not have to choose between sacrificing businesses' confidentiality and manipulating its civil docket.

In sum, the FTC has a strong interest in securing the confidentiality it offers to businesses and thus maintaining the efficiency of its investigations and civil enforcement actions. Unsealing the FTC's complaint in this case would undermine that interest by unsettling businesses' expectation of privacy. Because "release" of sensitive business information "is likely to cause [businesses] in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Amodeo*, 71 F.3d at 1050.

## CONCLUSION

For these reasons, this Court should deny ILSR's motion to unseal.

Respectfully submitted,

Dated: August 15, 2025

Jonathan D. Urick
Matthew P. Sappington
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

*/s/ Anthony J. Dick*
Anthony J. Dick
Avery Rasmussen Phillips
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001
(202) 879-3939
ajdick@jonesday.com

*Counsel for Amicus Curiae U.S. Chamber of Commerce*

12