**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

FEDERAL TRADE COMMISSION,

              Plaintiff,

      v.                            Case No. 1:25-cv-00664-JMF

PEPSICO, INC.,

              Defendant.

-------------------------------------------------------- X

**DEFENDANT'S MEMORANDUM OF LAW IN**
**<u>OPPOSITION TO MOTION TO UNSEAL</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

    A.    Because The Court Took No Action On The Complaint, Public Access Is Not Presumed ........................................................................................................... 5

    B.    The Serious Risk Of Harm To Pepsi And Third Parties Outweighs Any Presumption of Public Access ............................................................................. 8

        1.    The Redactions In The Complaint Should Be Maintained In Their Entirety ....................................................................................................... 9

        2.    At Minimum, Several Key Groups Of Material Should Remain Under Seal ........................................................................................................... 12

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016)....................................................................................5, 7

*City of Providence v. BATS Glob. Mkts., Inc.*,
  2022 WL 539438 (S.D.N.Y. Feb. 23, 2022) (Furman, J.) ...........................12, 15, 16

*Coscarelli v. ESquared Hosp. LLC*,
  2021 WL 5507034 (S.D.N.Y. Nov. 24, 2021) (Furman, J.) ...........................5, 6, 13

*Cunningham v. Cornell Univ.*,
  2019 WL 10892081 (S.D.N.Y. Sept. 27, 2019)..................................................14

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  119 F. Supp. 3d 152 (S.D.N.Y. 2015)...............................................................11

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
  441 U.S. 211 (1979)........................................................................................11

*Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*,
  26 F. Supp. 2d 606 (S.D.N.Y. 1998)................................................................15

*FTC v. iQvia Holdings Inc.*,
  No. 1:23-cv-06188 (S.D.N.Y. filed July 18, 2023)................................................4

*FTC v. PepsiCo, Inc.*,
  No. 1:25-mc-00033 (S.D.N.Y. Jan. 21, 2025) .....................................................2

*Generali-U.S. Branch v. Arrowood Indem. Co.*,
  2013 WL 12311009 (S.D.N.Y. July 11, 2013) .....................................................9

*Giannasca v. PepsiCo, Inc.*,
  No. 1:25-cv-06440 (S.D.N.Y. filed Aug. 5, 2025) ...............................................12

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
  769 F. Supp. 2d 630 (S.D.N.Y. 2011)...........................................................14, 16

*Haider v. Geller & Co.*,
  457 F. Supp. 3d 424 (S.D.N.Y. 2020)................................................................5

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*,
  335 F. Supp. 3d 566 (S.D.N.Y. 2018)................................................................16

*In re IBM Arb. Agreement Litig.*,
  76 F.4th 74 (2d Cir. 2023) ...............................................................................5

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  2014 WL 12772236 (S.D.N.Y. Nov. 5, 2014) .......................................................13

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
  97 F. Supp. 3d 485 (S.D.N.Y. 2015)....................................................................16

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006)...................................................................4, 5, 8

*Mirlis v. Greer*,
  952 F.3d 51 (2d Cir. 2020)...........................................................................4, 5

*In re NASDAQ Market-Makers Antitrust Litig.*,
  164 F.R.D. 346 (S.D.N.Y. 1996) ...................................................................6

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978)....................................................................................12

*Oliver Wyman, Inc. v. Eielson*,
  282 F. Supp. 3d 684 (S.D.N.Y. 2017)......................................................12, 15

*Playtex Prods., LLC v. Munchkin, Inc.*,
  2016 WL 1276450 (S.D.N.Y. Mar. 29, 2016) .............................................14

*SEC v. Ripple Labs*,
  2023 WL 3477552 (S.D.N.Y. May 16, 2023) ........................................14, 15

*SEC v. Telegram Grp. Inc.*,
  2020 WL 3264264 (S.D.N.Y. June 17, 2020) ..............................................16

*Skyline Steel, LLC v. PilePro, LLC*,
  101 F. Supp. 3d 394 (S.D.N.Y. 2015)...........................................................13

*SOHC, Inc. v. Zentis Sweet Ovations Holding LLC*,
  2014 WL 5643683 (S.D.N.Y. Nov. 4, 2014) (Furman, J.) ..............................7

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  621 F. Supp. 2d 55 (S.D.N.Y. 2007)...............................................................7

*Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*,
  2020 WL 5819864 (S.D.N.Y. Sept. 30, 2020)........................................13, 14

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995).............................................5, 6, 7, 8, 11, 12, 15

*United States v. Greenwood*,
  2025 WL 2101302 (2d Cir. July 28, 2025).......................................................9

*United States v. Procter & Gamble Co.*,
  356 U.S. 677 (1967) ....................................................................................11

*Valassis Commc'ns, Inc. v. News Corp.*,
  2019 WL 10984156 (S.D.N.Y. Mar. 11, 2019) ...........................................15

**Other Authorities**

Press Release, Fed. Trade Comm'n, *FTC Dismisses Lawsuit Against PepsiCo*
(May 22, 2025), https://www.ftc.gov/news-events/news/press-
releases/2025/05/ftc-dismisses-lawsuit-against-pepsico.........................................................1

*Southern District of New York*, Fed. Trade Comm'n,
https://www.ftc.gov/southern-district-new-york (last visited Aug. 15, 2025).........................5

**Statutes**

15 U.S.C. § 57b-2(f)(1)..................................................................................................................8

**Regulations**

16 C.F.R. § 4.10(g) .....................................................................................................................4

Defendant PepsiCo, Inc. ("Pepsi") respectfully submits this Memorandum in Opposition to Motion to Unseal by Institute for Local Self-Reliance ("ILSR").

## INTRODUCTION

This lawsuit, filed on the last business day of the previous Administration over the objection of career staff and thereafter voluntarily dismissed, marked the culmination of a highly abnormal and illegitimate process driven by the political leadership of the Federal Trade Commission ("Commission" or "FTC"). The redacted portions of the Complaint, which alleged falsely that Pepsi violated certain provision of the Robinson-Patman Act ("RPA"), should remain under seal.

In truth, the frivolous Complaint in this case never should have been filed, as the Commission has now acknowledged by voluntary dismissing and withdrawing the Complaint. The Commission thus affirms by its actions that the information contained in the Complaint should not have been distributed beyond the Commission and that Pepsi's confidentiality interests in its business records should be respected. Moreover, public access interests are at their lowest ebb where, as here, the Complaint played no role in the exercise of Article III judicial power. And serious countervailing considerations—including the harm to Pepsi's and third parties' business interests and reputations—decisively favor sealing. The redacted Complaint should accordingly remain under seal.

By its own admission, the Commission lacked any evidence to support the meritless and inflammatory allegations in its Complaint. ILSR now seeks to unseal these allegations not to audit the Court's Article III functions, as public access doctrine envisions, but to exploit confidential business materials—produced in reliance of the protections of the Commission's nonpublic investigation of Pepsi and third parties—for its own ends. Such disclosure would serve no legitimate public interest; it would only compound the harms flowing from the Complaint's initial

filing, subjecting Pepsi and third parties to improper ridicule, competitive disadvantage, and renewed reputational harm.

Pepsi therefore requests that the Court maintain the unredacted Complaint under seal in its entirety. In the alternative, should the Court order that portions of the Complaint be unsealed, Pepsi has submitted an Appendix under seal that includes a chart listing redactions for which unsealing would be particularly inappropriate ("Appendix"), namely confidential commercial information, customer-specific business strategies and plans, and internal pricing and go-to-market plans.

## FACTUAL BACKGROUND

During the Commission's nonpublic investigation of Pepsi for potential violations of the RPA, Pepsi produced *hundreds of thousands* of confidential and competitively-sensitive documents, some of which the Commission incorporated into its now-withdrawn Complaint. Dkt. No. 1. The Commission redacted this information from its Complaint, as required by governing regulation. *See* 16 C.F.R. § 4.10(g). And on January 21, 2025, Judge Torres granted the Commission leave to file this case with a redacted Complaint in public view and an unredacted Complaint temporarily under seal. Order, *FTC v. PepsiCo, Inc.*, No. 1:25-mc-00033 (S.D.N.Y. Jan. 21, 2025).

On January 23, 2025, the Commission docketed the Complaint against Pepsi, alleging violations of Sections 2(d) and 2(e) of the RPA and Section 5 of the Federal Trade Commission Act. Dkt. No. 1. On January 24, 2025, the Court ordered Pepsi to file a letter motion in support of continued sealing or redaction, as the Commission had requested "only temporary relief to provide Pepsi an opportunity to move to permanently seal the select references currently temporarily under seal." Dkt. No. 9. Contrary to ILSR's assertion (ILSR Br. at 2), Pepsi's deadline to move to permanently seal was June 6, 2025, not May 23, 2025. Dkt. No. 41.

On May 22, 2025, before Pepsi had an opportunity to move to dismiss the Complaint or file a letter motion on sealing, the Commission voted 3-0 to voluntarily dismiss the case.[1] In a joint statement accompanying the withdrawal of the Complaint, Chairman Ferguson and Commissioner Holyoak decried the Complaint as being filed "in the blind" with "no evidence to support [its] most important allegations." Ex. D (Ferguson Statement) at 1. Commissioner Meador, a vocal *proponent* of RPA enforcement, agreed, characterizing the Complaint as reflecting a "complete lack of intellectual rigor" and a "reckless disregard for sound factual evidence"—it was, he said, "possibly the most reckless and irresponsible use of antitrust enforcement resources [he had] witnessed." Ex. E (Meador Statement) at 1.[2] The Commission thus voluntarily dismissed the Complaint that same day, without imposing any remedy on or reaching a settlement with Pepsi. Dkt. No. 42. Instead, the Commission emphasized that the Complaint should never have been filed in the first place. This Court then ordered the case closed. Dkt. No. 43.

Over two months later, on August 4, 2025, ILSR filed a Motion to Intervene for the limited purpose of asking this Court to unseal the Complaint. Dkt. No. 45. On August 5, 2025, the Court granted ILSR's Motion to Intervene and invited briefing from any interested parties on ILSR's

---

[1]  Press Release, Fed. Trade Comm'n, *FTC Dismisses Lawsuit Against PepsiCo* (May 22, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/05/ftc-dismisses-lawsuit-against-pepsico.

[2]  All statements made by the Chair and Commissioners in connection with the issuance and withdrawal of the Complaint are attached as Exhibits A through E. *See* Ex. A (Dissenting Statement of Comm'r Andrew N. Ferguson, *In the Matter of PepsiCo, Inc.*, File No. 2210158 (Jan. 17, 2025)) ("Ferguson Dissent"); Ex. B (Dissenting Statement of Comm'r Melissa Holyoak, *In the Matter of PepsiCo, Inc.*, File No. 2210158 (Jan. 17, 2025)) ("Holyoak Dissent"); Ex. C (Statement of Chair Lina M. Khan and Comm'r Alvaro M. Bedoya, *In the Matter of Non-Alcoholic Beverages Price Discrimination Investigation*, File No. 2210158 (Jan. 17, 2025)); Ex. D (Statement of Chairman Andrew N. Ferguson, Joined by Comm'r Melissa Holyoak, *In the Matter of Non-Alcoholic Beverages Price Discrimination Investigation*, File No. 2210158 (May 22, 2025)) ("Ferguson Statement"); Ex. E (Statement of Comm'r Mark R. Meador, *In the Matter of Non-Alcoholic Beverages Price Discrimination Investigation*, File No. 2210158 (May 22, 2025)) ("Meador Statement").

Motion to Unseal. Dkt. No. 51. Pepsi opposes unsealing.

## ARGUMENT

The presumption of public access to judicial documents is not absolute, and courts in this District routinely maintain information under seal. *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). This is particularly true in the case of antitrust enforcement actions like the one here. The Commission's complaint in *FTC v. iQvia Holdings Inc*., No. 1:23-cv-06188 (S.D.N.Y. filed July 18, 2023), as one specific example of many, has remained redacted following adjudication.[3]

To determine whether a judicial document may be filed under seal, courts apply a balancing test. A court must first "determine the weight of [the] presumption" in favor of unsealing, and then "balance competing considerations against [the weight of that presumption]." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). If, as here, the balance of the factors tips in favor of the competing considerations, the court must permit the material to remain sealed. *Mirlis*, 952 F.3d at 59.

As explained below, all of the redactions contained in the Complaint should remain under seal because the presumption in favor of public access is weak and there are strong private interests in favor of continued redaction. In the alternative, and in the event the Court determines that some redacted information should be unsealed, Pepsi has identified in its Appendix categories of redactions for which unsealing would be particularly inappropriate.

---

[3] The FTC lists its various actions in SDNY on its website. *See Southern District of New York*, Fed. Trade Comm'n, https://www.ftc.gov/southern-district-new-york (last visited Aug. 15, 2025). Scanning the dockets in these matters, it appears nearly all have motions or exhibits that were submitted under (and remain under) seal.

**A.      Because The Court Took No Action On The Complaint, Public Access Is Not Presumed**

At the first step in the Second Circuit's sealing balancing test, this Court must consider "the weight to be given the presumption of access." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d. Cir. 1995). "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Mirlis*, 952 F.3d at 59 (quoting *id.*); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 85–86 (2d Cir. 2023) (similar); *see also Lugosch*, 435 F.3d at 119 ("The common law right of public access to judicial documents is . . . based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice."). In particular, it permits the public to "understand the activity of the federal courts" to "enhance[] the court system's accountability and legitimacy." *See Haider v. Geller & Co.*, 457 F. Supp. 3d 424, 427 (S.D.N.Y. 2020) (citing *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016)). The weight of the presumption thus turns on a particularized, case-specific inquiry and focuses on the Court's actions with respect to the material under seal. The presumption is strongest when the relevant document forms the basis of the court's adjudication, and weakest when the document has little role in the performance of the court's duties. *Coscarelli v. ESquared Hosp. LLC*, 2021 WL 5507034, at *21 (S.D.N.Y. Nov. 24, 2021) (Furman, J.).

Indeed, where a document "play[s] only a negligible role in the performance of Article III duties, the weight of the presumption is *low* and amounts to *little more than a prediction of public access absent a countervailing reason*." *Amodeo*, 71 F.3d at 1050 (emphasis added); *see also Coscarelli*, 2021 WL 5507034, at *21 ("[T]he presumption of access is at its weakest in documents that have only a negligible role in the performance of Article III duties.") (cleaned up). Without

5

meaningful judicial action, there is simply no Article III activity to audit, and the presumption is at its lowest. *Coscarelli*, 2021 WL 5507034, at *21.

This is indisputably the case here. The Commission docketed its Complaint against Pepsi on January 23, 2025, and then voluntarily dismissed that Complaint on May 22, 2025. Dkt. Nos. 1, 43. During the intervening period, the Court took no action to adjudicate the Complaint—handling only routine case management tasks, such as *pro hac vice* applications and initial scheduling matters. The Court then closed the case without ever opining *in any way* on the merits of the Commission's allegations. The Court accordingly engaged in only the "negligible" exercise of its Article III duties—both with respect to the redacted Complaint and the case overall—and the "presumption" of public access here is therefore "little more than a prediction." *Amodeo*, 71 F.3d at 1050.

In fact, because of the early and unilateral termination of proceedings by the Commission, Pepsi was never afforded an opportunity to respond to the Complaint's baseless allegations, including, as Commissioner Meador observed, the "purported comments from Pepsi personnel . . . that can most generously be described as cherry-pick[ed]" and devoid of context. Ex. E (Meador Statement) at 2. Unsealing the Complaint would unfairly reveal these false or misleading allegations and the confidential materials that purportedly support them, all without proper context or "a fair opportunity for [Pepsi] to respond to any accusations contained therein." *Amodeo*, 71 F.3d at 1051; *In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 346, 358 (S.D.N.Y.

1996); *see also Amodeo*, 71 F.3d at 1048–49 (cautioning against the unnecessary release of "misleading or downright false information").[4]

ILSR fails to engage in any analysis regarding the proper weight of the presumption of access. Instead, ILSR baldly asserts that a "strong presumption" applies and argues, citing *Bernstein*, that "the Complaint's dismissal and untested veracity is irrelevant." ILSR Br. at 6. ILSR's position is plainly incorrect for the reasons discussed above. The Complaint's status as a judicial document merely triggers—but is not dispositive of—the Second Circuit's balancing test. Neither *Bernstein* nor any other case cited by ILSR addresses the strength of the presumption of public access where, as here, a complaint is voluntarily withdrawn prior to adjudication by the court.

Critically, ILSR seeks extraordinary relief here not to audit the federal courts, as public access doctrine contemplates, but rather to audit Pepsi and to amplify the false narrative that Pepsi favors certain customers over others. *See* ILSR Br. at 7. Its brief says the quiet part out loud: it wants the withdrawn Complaint unsealed so it can extract "the identity of the 'big box Retailer' receiving preferential allowances and services from Pepsi; the disfavored smaller retailers harmed by the conduct; the nature, scope, and impact of the alleged scheme; and the commodities sold." ILSR Br. at 2. That Complaint, as the Commission acknowledges, is built on selective and

---

[4] The presumption in favor of access is low for the additional reason that the Complaint is replete with gratuitous allegations bearing no relevance to the actual claims asserted, as the Commission itself has recognized. *See* Ex. A (Ferguson Dissent) at 3 (noting that the Complaint's allegations have no relevance to the Section 2(d) and 2(e) claims actually brought by the Commission); Ex. B (Holyoak Dissent) at 2 (same); Ex. E (Meador Statement) at 2 (same). Where confidential material is "us[ed] . . . to support obviously irrelevant or nonviable arguments," a lower presumption of public access applies. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 70 (S.D.N.Y. 2007); *see also SOHC, Inc. v. Zentis Sweet Ovations Holding LLC*, 2014 WL 5643683, at *5 (S.D.N.Y. Nov. 4, 2014) (Furman, J.) (presumption in favor of access low for irrelevant material).

misleading excerpts from hundreds of thousands of confidential business documents that Pepsi produced to the Commission in good faith during a non-public investigation—material far beyond what any would-be private plaintiff like ILSR could compel.[5] The Commission now concedes those materials furnish no support for any allegation of wrongdoing. Issuing the Complaint was, in short, a miscarriage of justice. And unsealing it now would only compound that injustice by enabling ILSR and other private parties to exploit the very same confidential business information the Commission already misused. The common law right of access to judicial documents was never intended to be weaponized in such a brazen fashion.

## B.    The Serious Risk Of Harm To Pepsi And Third Parties Outweighs Any Presumption of Public Access

In the second step of the sealing test, "the court must balance competing considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). This step is often dispositive in favor of sealing, even in fully adjudicated cases where the presumption of public access is strongest. With the weight of the presumption at its lowest ebb here, only a modest "countervailing reason" is required to justify sealing. *Amodeo*, 71 F.3d at 1050. And there are multiple compelling reasons to maintain the unredacted Complaint under seal in this action. The Commission itself has acknowledged that the Complaint never should have been issued, and unsealing its contents would magnify the harm it has already inflicted, including by revealing the confidential commercial information of both Pepsi and third parties.

In the alternative, if the Court determines that some redactions should be lifted, the Court should ensure that confidentiality is maintained with respect to at least those portions of the

---

[5] Notably, the Commission is bound not to disclose "[a]ny material" from "any [FTC] investigation" either in response to Freedom of Information Act requests or pursuant to "any other provision of law." 15 U.S.C. § 57b-2(f)(1).

Complaint identified in Pepsi's Appendix accompanying this filing. Pepsi's alternative request for sealing is narrowly tailored to cover three categories of particularly sensitive information: (1) confidential negotiations between Pepsi and its retail customers; (2) confidential, customer-specific business strategies and forward-looking plans; and (3) confidential pricing and go-to-market plans.[6]

### 1.    The Redactions In The Complaint Should Be Maintained In Their Entirety

Substantial countervailing considerations amply justify maintaining the unredacted Complaint under seal in its entirety. In light of the extraordinary circumstances surrounding the Complaint's issuance, its subsequent retraction, and the concededly misleading narrative presented in the redacted materials (to which Pepsi has had no opportunity to respond), the harms that would befall Pepsi and third parties in the event of the Complaint's disclosure are particularly acute.

The record makes clear that all of the redacted portions of the Complaint should remain under seal. As the Commission itself concedes, this case should never have been brought. Then-Commissioner Ferguson remarked at the time that "[t]he gaping holes in the evidence that Commission staff collected in its limited investigation make it impossible to determine whether

---

[6] ILSR claims that Pepsi must justify "each black box in the Complaint and explain why each redacted allegation merits protection." ILSR Br. at 7. While Pepsi bears the burden of demonstrating that the Complaint should remain sealed, it "need not provide granular justifications for each redaction." *See United States v. Greenwood*, 2025 WL 2101302, at *5 (2d Cir. July 28, 2025) (requiring such granular justifications would place "unworkable burden" on district courts). Indeed, Pepsi may meet its burden by offering categorical justifications that "make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *See Generali-U.S. Branch v. Arrowood Indem. Co.*, 2013 WL 12311009, at *2 (S.D.N.Y. July 11, 2013). However, if the court finds this approach insufficient, Pepsi stands ready to provide further information consistent with the Court's view.

[Pepsi] has broken the law." Ex. A (Ferguson Dissent) at 1.[7] Its filing was a "nakedly political" act that has already caused—and continues to cause—substantial harm to Pepsi, which never had the opportunity to set the record straight in litigation. Ex. D (Ferguson Statement) at 2. Public policy accordingly favors sealing.

Unsealing the misleading allegations in the Complaint also promises to further damage Pepsi's reputation with its customers and thereby harm Pepsi's competitive standing. Pepsi relies upon the ability to maintain its sensitive commercial and competitive information in confidence. *See infra*, at 13–16. And, as the Commission itself recognized, much of the material ILSR seeks to unseal here includes "cherry-pick[ed]," out-of-context excerpts from Pepsi's confidential business materials. Ex. E (Meador Statement) at 2. Unsealing these materials and making public the distorted narrative in the Complaint could lead some of Pepsi's customers to remove or de-prioritize Pepsi's products or to otherwise use the generic allegations of wrongdoing lodged against Pepsi as retaliatory leverage in space negotiations. *See* Murray Decl. at ¶¶ 12, 20, 27.

Also, as described in more detail below, *see infra*, at 15, the Complaint exposes the confidential information of Pepsi's third-party retail customers who were implicated in the investigation. Unsealing is inappropriate with respect to this information, especially as those customers have no notice that their information appears in the redacted Complaint and therefore no opportunity to explain to this Court the harms that would flow from unsealing. These "privacy interests of innocent third parties should weigh heavily in [the] court's balancing equation."

---

[7] Commissioner Meador has likewise explained that the Commission filed this case based on nothing more than "speculation." Ex. E (Meador Statement) at 2; *see also* Ex. A (Ferguson Dissent) at 4 (the Commission filed its Complaint "knowing [it did] not have any evidence to support the Complaint's most important allegations"). Commissioner Holyoak called this case "the worst" she had "seen in [her] time at the Commission" and characterized the Complaint as "[w]holly deficient, not only because the pleadings fail to state a claim, but because the Majority rushed the case out the door before it had evidence to support the allegations." Ex. B (Holyoak Dissent) at 1.

*Amodeo*, 71 F.3d at 1050 (cleaned up); *see, e.g.*, *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (sealing "customers' internal corporate documents that govern investment strategies, information regarding proprietary modeling assumptions, and more generally, customer names, account numbers, and pricing information").

Under these extraordinary circumstances, sealing is proper and necessary to ensure that the "innocent accused"—against whom the government entity ought not have pursued claims—"will not be held up to public ridicule." *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979) (discussing grand jury proceedings); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1967) (same). Citizens rely on their government institutions to conduct law enforcement activities while respecting privacy interests, especially in those instances where the facts establish that no wrongdoing occurred. The Commission broke that trust here. Unsealing the Complaint would cause severe reputational harm to Pepsi and third parties, exposing them to public spectacle over baseless allegations that have never been, and rightly were not, adjudicated by the Court. *See supra*, at 6–7, 10 (discussing harms of releasing cherry-picked information in the Complaint to which Pepsi had no opportunity to respond). The strong public policy interests protecting Pepsi from the consequences of unfounded governmental accusations thus weigh in favor of maintaining the redactions.

The Commission's admittedly baseless lawsuit, even though withdrawn, has already caused Pepsi significant harm in the marketplace and public forum. Unsealing the Complaint would only exacerbate the damage stemming from the Commission's concededly improper action. As ILSR makes clear, potential litigants are already lining up to leverage the Commission's meritless and dismissed Complaint for their own gain. ILSR Br. at 7 (listing the information ILSR seeks to uncover in an obvious effort to assist its members in filing future litigation). In fact, within

*days* of ILSR's filing seeking public access to the unredacted Complaint, a threadbare putative class action complaint was filed in this District against Pepsi. Compl., *Giannasca v. PepsiCo, Inc.*, No. 1:25-cv-06440 (S.D.N.Y. filed Aug. 5, 2025). The plaintiffs in that case borrow extensively from the redacted Complaint in this matter, presumably intending to amend their complaint with the aid of any material unsealed as a result of ILSR's request. The Court should not sanction this opportunism. Maintaining sealing serves both the interests of justice and judicial economy.

Any public interest in assessing the contents of the Complaint is already fulfilled by the existing public record—namely, the redacted Complaint under public view. Further unsealing would not meaningfully promote transparency or public understanding. It would serve only to damage Pepsi's competitive standing and expose Pepsi's sensitive business information to those seeking to exploit it for collateral litigation.

### 2.    At Minimum, Several Key Groups Of Material Should Remain Under Seal

In the event the Court determines that some of the redacted materials should be unsealed, Pepsi submits that at least certain categories of information should remain sealed. It is well established that "courts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'" *City of Providence v. BATS Glob. Mkts., Inc.*, 2022 WL 539438, at *1 (S.D.N.Y. Feb. 23, 2022) (Furman, J.) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The privacy interests of non-parties also "weigh heavily" in the "balancing equation." *Amodeo*, 71 F.3d at 1050; *see also Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017). Pepsi accordingly submits that countervailing considerations far outweigh any applicable presumption of public access with respect to at least the following categories of redactions.

- ***Confidential Commercial Information.*** Pepsi requests the redaction of quotations from and references to sensitive details of Pepsi's confidential negotiations with its retail

12

customers, including internal documents discussing related negotiation strategies. *See* App. This information includes detailed breakdowns of the value Pepsi provides to certain third parties, as well as Pepsi's internal incentives and analyses underlying its negotiations with customers.

- ***Customer-Specific Business Strategies and Plans.*** Pepsi also requests redaction of quotations from and references to Pepsi's customer-specific business strategies and forward-looking plans. *See* App. These materials relate to Pepsi's customer-specific internal data analytics, market analyses, market intelligence designed to support future negotiations, and customer-specific discussions relating to pricing, sales, distribution, merchandising, and space agreements.

- ***Internal Pricing and Go-to-Market Plans.*** Pepsi further requests the redaction of quotations from and references to Pepsi's internal pricing and business plans. *See* App. These materials include references to Pepsi's internal pricing practices and guidelines, omnichannel go-to-market strategy, marketplace analyses, and discussions regarding pricing fairness across the marketplace. They also, in some cases, reference or reflect Pepsi's proprietary business data, including confidential pricing and revenue data. *Id.*

Courts routinely find that "the interest in maintaining the confidentiality of sensitive commercial information outweighs the interest in public access to information." *Coscarelli,* 2021 WL 5507034, at *21; *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2014 WL 12772236, at *2 (S.D.N.Y. Nov. 5, 2014); *see also Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412–13 (S.D.N.Y. 2015) (finding sealing proper for "confidential negotiations" and "highly confidential sales information"); *Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020) (documents "containing trade secrets, confidential

research and development information, marketing plans, revenue information, pricing information, and the like" are "commonly sealed"); *Cunningham v. Cornell Univ.*, 2019 WL 10892081, at *2 (S.D.N.Y. Sept. 27, 2019) (granting motion to seal "pricing terms" offered to non-party clients). And for good reason.  Unsealing these materials would unnecessarily risk irreparable harm to Pepsi's business relationship and competitive standing.

For example, the disclosure of confidential materials relating to customer negotiations would be "highly detrimental to [Pepsi]'s competitive standing and business relationships with current and prospective partners." *SEC v. Ripple Labs*, 2023 WL 3477552, at *5 (S.D.N.Y. May 16, 2023).  Allowing further dissemination of allegations that even the Commission has repudiated—particularly allegations regarding Pepsi's interactions with its customers—risks severely and irreparably harming Pepsi's reputation and standing with its customers. As noted above, customers may respond to the allegations by making adverse business decisions against Pepsi, including by reducing Pepsi's product assortment and shelf space. Similarly, Pepsi's competitors, who contract with many of these same retail customers, could likewise take advantage of Pepsi's confidential materials in their own negotiations, further disadvantaging Pepsi. Murray Decl. at ¶¶ 10–11, 17–19.

Disclosure of Pepsi's internal go-to-market plans and other non-public financial information and business metrics, including "sales and revenue" data, would also give "competitors insight into specifics as to" Pepsi's internal business strategy. *Playtex Prods., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016); *see also, e.g.*, *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.,* 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (sealing information about "costs and budgeting"). The disclosure of this competitively-sensitive information would risk undermining Pepsi's ability to compete effectively in the market and

harming Pepsi's relationships with its customers. *Valassis Commc'ns, Inc. v. News Corp.*, 2019 WL 10984156, at *1 (S.D.N.Y. Mar. 11, 2019) (sealing information about "costs, revenues, prices of products, [and] number of placements of those products" because disclosure would put company "at a competitive disadvantage"); *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc*., 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."); *see also Amodeo*, 71 F.3d at 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts. . . .").

Pepsi's confidential negotiations also implicate the privacy interests of third parties, a consideration recognized as a "venerable common law exception to the presumption of access." *Amodeo*, 71 F.3d at 1051; *see also Oliver Wyman*, 282 F. Supp. 3d. at 706. Here, Pepsi and its retail customers—the latter of whom, because the Complaint is redacted, do not know to plead their case to this Court—reasonably expected that the details of their confidential negotiations and retail selling strategies would be protected from disclosure to their competitors, among others. Murray Decl. at ¶ 28. Permitting public disclosure would shatter that expectation and place both Pepsi's retail customers at a competitive disadvantage, as the competitors of these retailers would obtain insight into confidential business strategies. *Id.* at ¶ 21. Courts have routinely found sealing appropriate under these circumstances. *See, e.g.*, *Ripple Labs*, 2023 WL 3477552, at *6 (disclosure of similar confidential negotiations "detrimentally affect[s]" "the privacy interests of non-parties" when those non-parties expected the information to "remain private"); *City of Providence*, 2022 WL 539438, at *3 (explaining that "the third-party privacy interest of Nasdaq's customer in preventing disclosure of this sensitive information regarding its trading and business strategies is significant").

Confidential customer information of this sort "is 'commonly sealed.'" *City of Providence*, 2022 WL 539438, at *2 (quoting *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018)). Here, Pepsi has significant privacy interests in protecting business materials and information that would be valuable to its competitors and the competitors of its retail customers. *See GoSmile*, 769 F. Supp. 2d at 649–50 (finding in favor of sealing "material concerning the defendants' marketing strategies [and] product development" because of its "highly proprietary" nature); *see also Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (granting request to seal information related to "advertising expenditures and plans" "merchandising strategies" "investigative reports" and "information about [] business operations"); *SEC v. Telegram Grp. Inc.*, 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020) (sealing "proprietary internal analyses of [] investment opportunity"). Indeed, disclosure of Pepsi's internal business plans to its competitors and the broader public would diminish Pepsi's ability to develop competitive marketing strategies, jeopardizing its standing in the overall market. Disclosure of these materials, which discuss customer preferences and confidential business strategies, would also implicate the privacy interests of third parties and risks placing those customers at a competitive disadvantage, further supporting sealing. Murray Decl. at ¶ 21.

## CONCLUSION

For the reasons set forth above, Pepsi respectfully requests that the Court maintain the unredacted Complaint under seal in its entirety or, in the alternative and in the event the Court determines some portions of the Complaint should be unsealed, the Complaint should be redacted as set forth in the Appendix.

Should the Court determine that sealing is appropriate for only a subset of the information identified in the Appendix, Pepsi respectfully requests the opportunity to propose redactions

consistent with guidelines the Court may articulate. Additionally, in the event the Court determines any portion of the Complaint should be unsealed, Pepsi respectfully requests that the Court stay the release of the sealed material for a sufficient period to allow Pepsi to seek appellate relief. Pepsi respectfully requests oral argument on this Motion.


Dated: August 15, 2025

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Stephen Weissman*
    Stephen Weissman

Stephen Weissman (*pro hac vice*)
Christine Buzzard (*pro hac vice*)
Steve B. Pet (*pro hac vice*)
Logan J.R. Billman (*pro hac vice*)
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
sweissman@gibsondunn.com
cbuzzard@gibsondunn.com
spet@gibsondunn.com
lbillman@gibsondunn.com

Thomas Tyson (*pro hac vice*)
555 Mission Street
Suite 3000
San Francisco, CA 94105-0921
(415) 393-8200
TTyson@gibsondunn.com

Aha In Lee
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
alee2@gibsondunn.com

*Attorneys for Defendant PepsiCo, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 5,070 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Washington, D.C.
        August 15, 2025

                                        <u>*/s/ Stephen Weissman*</u>
                                        Stephen Weissman