# EXHIBIT A



UNITED STATES OF AMERICA
# Federal Trade Commission
WASHINGTON, D.C. 20580

Office of Commissioner
Andrew N. Ferguson

### Dissenting Statement of Commissioner Andrew N. Ferguson
### In the Matter of Non-Alcoholic Beverages Price Discrimination Investigation
### Matter Number 2210158

January 17, 2025

On the eve of its eviction from power at the hands of the American voters, the Commission's Democratic majority offers one final insult to the Commission, its staff, and the rule of law. In a cynical attempt to tie the hands of the incoming Trump Administration, the Democratic majority launches a major lawsuit on little more than a hunch. The gaping holes in the evidence that Commission staff collected in its limited investigation make it impossible to determine whether the defendant, PepsiCo, Inc. ("Pepsi"), has broken the law. The Commission majority sues Pepsi nonetheless.[1]

The paucity of evidence is not a problem for the majority, because the law is beside the point. The Democrats intend to "revive" the Robinson-Patman Act as a political matter.[2] Whether anyone is actually violating the law is not relevant to reviving it. The Complaint will generate much press, which in turn creates opportunities for editorials, speeches, and Tweets. This case is thus about partisan politics, pure and simple. It is the single most brazen assertion of raw political power I have witnessed during my time as a Commissioner. And it deals a mighty blow to the prospect of bipartisan Commission support for renewed enforcement of the Robinson-Patman Act—bipartisan support that emerged just weeks ago. I dissent.

The Complaint accuses Pepsi of violating the Robinson-Patman Act[3] by selling beverages to a big-box store at lower prices than Pepsi sells those same beverages to other retailers, or by offering promotions and/or services to the big-box store that Pepsi did not offer to other retailers.[4] Congress passed the Robinson-Patman Act in response to the chain-store revolution of the 1920s and 1930s.[5] It forbids firms from engaging in certain types of economic discrimination.[6] The central provision is Section 2(a), which forbids firms from charging competing buyers different prices for the same goods.[7] The Act further includes ancillary provisions like Sections 2(d) and 2(e), which together forbid firms from offering promotional payments or services "in connection with the processing, handling, sale, or offering for sale" of goods, without making those payments

---

[1] Complaint, *FTC v. PepsiCo, Inc.* (S.D.N.Y. Jan. 17, 2025) ("Complaint").

[2] Alvaro Bedoya, I Work at the F.T.C. I Know What Is Killing Local Groceries, N.Y. Times (Jan. 13, 2025) (rebuking "[c]ritics of the commission's efforts to revive Robinson-Patman").

[3] 15 U.S.C. § 13.

[4] Complaint ¶¶ 2–18.

[5] Dissenting Statement of Comm'r Andrew N. Ferguson, *In re Southern Glazer's Wine and Spirits*, Matter No. 2110155, at 4–5 (Dec. 12, 2024) ("Ferguson Southern Glazer's Dissent"); Dissenting Statement of Comm'r Melissa Holyoak, *In the Matter of Southern Glazer's*, Matter No. 2110155, at 2–6 (Dec. 12, 2024).

[6] Ferguson Southern Glazer's Dissent at 5–6.

[7] *Ibid*; 15 U.S.C. § 13(a).

or goods available to competing customers "on proportionally equal terms."[8] As Commissioner Holyoak explains, Sections 2(d) and 2(e) are anticircumvention rules that prevent firms from evading Section 2(a)'s prohibition on price discrimination by offering every customer the same price, but then providing side payments or services to favored customers.[9] The Commission accuses Pepsi of having violated Sections 2(d) and 2(e), rather than Section 2(a).[10]

Congress adopted the Robinson-Patman Act in 1936, and the Commission enforced it vigorously for decades.[11] Many of its cases, however, were imprudent and protected large businesses from smaller competitors.[12] After the econometric turn in antitrust law, the academy, the bar, and the government all decided that the law was outdated and unsound.[13] By the 1980s, the government had effectively ceased to enforce the Act because of disagreement with its underlying policy.

Last month, the Commission brought its first Robinson-Patman Act case in 25 years.[14] I rejected the prevailing consensus that the government should never enforce the Act.[15] It is a duly-enacted law that Congress has repeatedly declined to repeal. Whatever policy misgivings I may have with its underlying policy, the Constitution forbids me as an officer of the United States from treating a valid law as a nullity.[16] I dissented from filing the *Southern Glazer's* complaint, however, on two grounds. First, although Commission staff had conducted a comprehensive investigation, we lacked evidence that the defendant had engaged in the sort of price discrimination that the Act forbids, or that any competitors had suffered any injury from whatever differential pricing may have occurred.[17] Second, even if we had such evidence, I would not have brought the suit because we lacked evidence that the favored retailers had market power, which meant that the suit ran a serious risk of injuring competition in the relevant markets and raising prices.[18] I made clear, however, that I was willing to enforce the Act where (1) we had solid evidence that a firm had violated the Act, and (2) the retailer benefitting from the discrimination had market power

---

[8] 15 U.S.C. § 13(d), (e).

[9] Dissenting Statement of Comm'r Melissa Holyoak, *In re PepsiCo, Inc.*, Matter No. 2210158, at 1–2 (Jan. 17, 2025) ("Holyoak Pepsi Dissent") ("Sections 2(d) and 2(e) reflect Congress' aim in 1936 to proscribe evasions of Section 2(a)'s ban on price discrimination by arrangements which disguise discriminatory favoritism to large buyers via cooperative promotional arrangements.").

[10] Compl. ¶¶ 74–79.

[11] Ferguson Southern Glazer's Dissent at 8–9 ("Robinson-Patman Act complaints dominated the Commission's antitrust workload.").

[12] U.S. Dep't of Justice, Dep't of Justice Report on The Robinson-Patman Act, 97–98 (1977) ("[T]he Robinson-Patman Act in ironic contradiction to the professed intentions of its sponsors has actually placed an unfair enforcement burden on smaller companies."); Ferguson Southern Glazer's Dissent at 9.

[13] *Id.* at 9–10.

[14] *Id.* at 10 ("In 2000, the Commission issued a complaint and consent order against spice maker McCormick and Company. That was the last time the Commission purported to enforce the Act." (citing *In the Matter of McCormick & Co., Inc.*, No. 961-0050, 2000 WL 264190, at *3 (Mar. 8, 2000))).

[15] Ferguson Southern Glazer's Dissent at 24 ("[D]isagreement with the protectionist bent of the Robinson-Patman Act is not a ground to decline to enforce it. Congress sets the country's antitrust policy, and the Executive Branch cannot categorically ignore a statute that Congress lawfully adopted.").

[16] *Id.* at 21 ("[T]he Constitution does not permit the Executive Branch to suspend the enforcement of a law on policy grounds.").

[17] *Id.* at 24–26.

[18] *Id.* at 27–30.

sufficient to pose a danger to competition.[19] My disagreement with my Democratic colleagues in *Southern Glazer's* was an honest disagreement over the meaning of the evidence, and the wisdom of bringing a particular case. What emerged from that case, then, was bipartisan agreement among the Commissioners that the government cannot simply ignore the Robinson-Patman Act, and that enforcement may be appropriate under certain circumstances.

The Democrats undo much of that progress by turning the Robinson-Patman Act into a political bludgeon. They have filed a complaint without evidence precisely so that they can say they are "reviving" the Act, thereby thrilling the sectors of their party that have demanded that the Act be revived. But that is not law enforcement. It is base politics.

For one thing, the Complaint is deficient on its face. As Commissioner Holyoak ably and concisely explains, this case is a Section 2(a) case masquerading as a case under Sections 2(d) and 2(e).[20] It appears that the majority's goal is to evade Section 2(a)'s requirement that disfavored retailers suffered injury as a result of the price discrimination—which is often difficult to prove— by relying on Sections 2(d)'s and 2(e)'s *per se* prohibitions.[21]

The problem is more fundamental than poor pleading. Under both Section 2(a) and Sections 2(d) and 2(e), a Robinson-Patman Act case always requires evidence of discrimination. Section 2(a) prohibits "discriminat[ing] in price between different purchasers."[22] Sections 2(d) and 2(e) forbid offering payments or services that are not provided to the favored purchasers competitors "on proportionally equal terms."[23] In order to declare in a complaint that a defendant is violating the Robinson-Patman Act, then, we must have evidence that the defendant treated at least one customer better than it treated that customer's competitors.

We have no evidence of disparate treatment. None. I have seen no evidence on which firms compete with the big-box retailer or where such competition takes place, much less any evidence suggesting that every brick-and-mortar store in America competes with it. I have seen no evidence that Pepsi denied to any firm the promotions or services it offered to the big-box store. I have seen no documents, data, testimony, or declarations from the big-box store or any other firm shedding any light on any of the Commission's allegations of discrimination or competition with the big-box store. Indeed, to my knowledge, the Commission has not reviewed a single piece of evidence from the big-box store or obtained any evidence from its putative competitors. The Commission has filed this Complaint in the blind, proceeding entirely on an academic theory devoid of evidence. But, again, this is not law enforcement. This is politics. Evidence and law are beside the point.

---

[19] *Id.* at 30 ("We ought to enforce the Act where it will serve the broad public interest, and bring only those cases we are likely to win.").

[20] Holyoak Pepsi Dissent at 2–3.

[21] *FTC v. Simplicity Pattern Co.*, 360 U.S. 55, 65 (1959) ("Subsections (c), (d), and (e) [of the Robinson-Patman Act] … unqualifiedly make unlawful certain business practices other than price discriminations."); *Woodman's Food Mkt., Inc. v. Clorox Co.*, 833 F.3d 743, 747 (7th Cir. 2016) (Subsection 13(e) of "the Robinson-Patman Act introduced a *per se* ban on one method that manufacturers had used to circumvent subsection 13(a): concealing price discrimination as a promotional service provided to the purchaser."); *Grand Union Co. v. FTC*, 300 F.2d 92, 99–100 (2d Cir. 1962) ("Section 2(d) defines an offense which is illegal per se.").

[22] 15 U.S.C. § 13(a).

[23] *Id.* § 13(d), (e).

Staff is not to blame for this. Congress has given the Commission what private antitrust litigants lack—powerful, coercive process to conduct pre-litigation investigations.[24] But the Democratic majority elected to devote almost no resources to this investigation.[25] As Pepsi's counsel explained to me, immediately after the election of President Trump, the case was rushed from the investigative stage, where information was still being requested and investigative depositions still pending, to the filing of a complaint. The Democratic majority has decided to file this case while knowing we do not have any evidence to support the Complaint's most important allegations. The decisions were made exclusively by Democratic Commissioners, not by staff.

But it is staff who will bear the cost of the Democrats' politically motivated decision-making. It is staff who must sign the Complaint.[26] It is staff who will have to explain this Complaint to a judge and try to survive a motion to dismiss. And it is staff who will try to investigate Pepsi's alleged conduct through discovery while simultaneously litigating that conduct.

The leadership of this Commission is supposed to have staff's back. The Bureau of Competition's staff are talented lawyers who work hard, care deeply about enforcing the antitrust laws, and want to win their cases. The Democratic majority's decision to assume the role of a pirate forcing staff to walk the gangplank is a sad betrayal of the relationship between the Commission and its staff.

This Complaint is a worse betrayal still of the American people. The Commission's resources are stretched thin, and Congress is not to blame. The Democratic majority has hired more employees than we can afford, thereby seriously threatening this agency's financial integrity. The Democratic majority tied up massive resources in rulemaking, shortchanging our enforcement efforts. And the Democratic majority has done its level best to tie the hands of the incoming Trump Administration by launching expensive rulemakings and enforcement matters days before President Trump's inauguration.[27]

None of these abuses is as egregious as this case. Antitrust conduct cases are expensive and time-consuming. Pre-suit investigations typically take years. Litigation takes years more.

---

[24] 15 U.S.C. §§ 49 (subpoenas), 57b-1(c)(1) (civil investigative demands).

[25] Chair Khan indicates that staff adequately investigated the Complaint's allegations against Pepsi because the investigation was "in process for nearly two and a half years." Statement of Chair Lina M. Khan and Comm'r Alvaro M. Bedoya, *In re Non-Alcoholic Beverages Price Discrimination Investigation*, Matter No. 2210158, at 6 (Jan. 17, 2025). But the time that an investigation has been open is irrelevant. An investigation starved of resources and staff accomplishes nothing.

[26] The premise of a professional civil service is that career officials must obey the lawful commands of their politically accountable leadership. Failure to do so is deeply anti-democratic. We do not vote for career civil servants. We vote for the President. He is accountable to the people. He then appoints the political leadership of the federal government to execute the laws on his behalf, and they are accountable to him. Statement of Comm'r Andrew N. Ferguson, Dissenting in Part and Concurring in the Denial of the Motion, *In re H&R Block, Inc.*, Docket No. 9427, at 1 (Oct. 18, 2024) ("Ferguson H&R Block Statement"). If civil servants disregard the lawful orders of the politically accountable leadership, they sever the "chain of dependence" that runs from "the lowest officers" to the people, through the President. 1 Annals of Cong. 499 (1789) (Statement of Rep. Madison). Disregarding lawful orders effectively denies the American people control over their own government. Ferguson H&R Block Statement at 1–2.

[27] See e.g., Press Release, FTC, FTC, States Sue Deere & Company to Protect Farmers from Unfair Corporate Tactics, High Repair Costs (Jan. 15, 2025); Press Release, FTC, FTC Proposes Rule Changes and New Rule to Deter Deceptive Earnings Claims by Multilevel Marketers and Money-Making Opportunity Sellers (Jan. 13, 2025).

Ordinary litigation expenses consume tens of millions of dollars. Every conduct case thus entails real trade-offs. When we bring a conduct case, we are foreclosing other potential merger and conduct cases. Conduct cases therefore must be brought only after careful investigation and deliberation have confirmed that the defendant is seriously degrading competition in our markets, and that the Commission is likely to prevail in court.

The Democratic majority has done neither of those things. My Democratic colleagues permitted precious little pre-suit investigation. They have no evidence on any of the most critical elements of a Robinson-Patman Act case. But they nevertheless commit potentially tens of millions of dollars to this escapade, thereby denying those funds to the rest of our competition-enforcement mission.

Therein lies the tragedy. The Democratic majority has made it so that anticompetitive mergers will go unchallenged, and anticompetitive conduct unaddressed, because they have tied up our scarce resources in this politically motivated travesty. Three Democrats, on the cusp of losing power, decided they would rather spend the American people's money on a political lark than protect competition in our markets. That is a shameful trade off.

Perhaps discovery will uncover evidence sufficient to establish a violation of the Robinson-Patman Act that harmed competition. If it does, then the suit should proceed. I remain of the view that the Commission should enforce the Act where it has solid evidence of a violation, and the beneficiaries of the alleged discrimination enjoy market power sufficient to threaten competition in the relevant market. But the fortuitous discovery of evidence in litigation would not justify today's decision. We hold our resources in trust for the American taxpayer. That trust does not permit us to file politically motivated lawsuits and hope we uncover evidence justifying those suits years later.

The Democratic Commissioners will not suffer the consequences of this power grab. The Commission's staff and the American people will. Like Tom and Daisy Buchanan, the Democratic Commissioners on the eve of their loss of power carelessly smash up the Commission, our staff, and our public credibility, before retreating into the minority and leaving others to clean up their mess.[28]

I dissent.

---

[28] F. Scott Fitzgerald, The Great Gatsby (1925) ("They were careless people, Tom and Daisy—they smashed up things and creatures and then retreated back into … their vast carelessness or whatever it was that kept them together, and let other people clean up the mess they had made.").