UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                                      :

FEDERAL TRADE COMMISSION,            :

                                             :

                         Plaintiff,         :

                                             :                 25-CV-664 (JMF)

           -v-                        :

                                             :               OPINION AND ORDER

PEPSICO, INC.,                         :

                                             :

                       Defendant.       :

                                           :

--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In January 2025, as one of its final acts under the Biden Administration, the Federal

Trade Commission ("FTC") sued PepsiCo, Inc. ("Pepsi") for unlawfully favoring one of its

retailers with better pricing and promotions in the resale of Pepsi products. Because the

Complaint contained information that Pepsi had produced to the FTC and designated

confidential, the FTC sought leave to temporarily file the Complaint with broad redactions to

give Pepsi an opportunity to review it and seek appropriate relief. The Court granted the FTC's

application, but it ordered Pepsi to make any request to maintain the Complaint under seal by the

deadline to answer. Before that date arrived, however, the change in Administration resulted in a

change of the FTC's position, and the FTC voluntarily dismissed the case. The case was closed

without any further review by the Court of the FTC's redactions.

      A few months later, the Institute for Local Self-Reliance ("ILSR") moved to intervene

and to unseal the FTC's heavily redacted Complaint. The Court granted the motion to intervene

and set a briefing schedule for any opposition to unsealing. Pepsi, supported by an amicus,

opposed the motion; the FTC took no position. Upon review of the motion papers, the Court

concludes that a strong presumption in favor of public access applies to the FTC's Complaint

and that the broad redactions made by the FTC, and supported by Pepsi, cannot be justified. That said, the Court approves narrow redactions to specific information concerning Pepsi's pricing, internal metrics and projections, and marketing strategies. Accordingly, and for the reasons set forth below, the Court GRANTS in part and DENIES in part the motion to unseal.

## BACKGROUND

On January 17, 2025, the FTC filed a motion seeking leave to file the Complaint in this case against Pepsi in redacted form, with an unredacted version of the Complaint to be temporarily filed under seal. *See* ECF No. 1, *Fed. Trade Comm'n v. PepsiCo, Inc.*, 25-MC-33 (AT) (S.D.N.Y. Jan. 17, 2025). In its accompanying memorandum of law, the FTC explained that, in connection with a non-public investigation, Pepsi had "produced information to the FTC that is relevant to the Complaint and that Pepsi designated as confidential" and that, "[b]y designating the information confidential, Pepsi asserted that the information is commercially and competitively sensitive and that its disclosure would be harmful." ECF No. 1-1, at 1-2, *PepsiCo, Inc.,* 25-MC-33 (AT) (S.D.N.Y. Jan. 17, 2025). The FTC stressed that it sought "only temporary relief to provide Pepsi an opportunity to move to permanently seal the select references currently temporarily under seal if they so desire." *Id.* at 2.

On January 21, 2025, another judge of this Court, sitting in Part I, granted the FTC's motion and ordered that the FTC's unredacted complaint be filed and maintained under seal "until Defendant, PepsiCo, Inc., . . . had adequate opportunity to seek an order permanently sealing the redacted portions of the Complaint." ECF No. 3, *PepsiCo, Inc.*, 25-MC-33 (AT) (S.D.N.Y. Jan. 17, 2025). Two days later, the FTC filed the Complaint in this lawsuit, which alleges that Pepsi engaged in price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13(d), (e), and the FTC Act, *id.* § 45. ECF No. 1 ("Compl."), ¶¶ 18-19, 74-81. The

2

agency's Complaint alleged that Pepsi had provided illegal pricing advantages to one of its retailers, putting its competitors at a significant disadvantage and inflating consumer costs. *See, e.g.*, *id.* ¶¶ 2-18, 36-67, 72.  Consistent with the January 21, 2025 Order, the Complaint was filed under seal, with a heavily redacted version in public view.

The next day, this Court entered an Order noting that the FTC had requested "only temporary relief" to afford Pepsi an opportunity to review the Complaint and seek leave for permanent redactions.  ECF No. 9 (internal quotation marks omitted).  The Court's Order provided that, "if Defendant believes that the Complaint should remain sealed or redacted, Defendant shall file a letter motion — no later than its deadline to answer the Complaint and not to exceed three pages — showing why doing so is consistent with the presumption in favor of public access to judicial documents." *Id.* (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006)).  Pepsi's deadline to answer — and, by extension, its deadline to move for permanent sealing — was originally March 24, 2025, but that deadline was later extended to May 23, 2025, and then to June 6, 2025.  *See* ECF Nos. 23, 41.  Pepsi never answered or filed a sealing motion, however, because, on May 22, 2025, the FTC voluntarily dismissed its Complaint, and the case was closed.  *See* ECF Nos. 42-43.

A few months later, ILSR, a non-profit research and advocacy organization, moved to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure for the limited purpose of asking the Court to unseal the Complaint.  *See* ECF No. 45.  The Court granted ILSR's motion to intervene and invited "any party" believing that the Complaint "should remain sealed or redacted" to file an opposition to ILSR's motion.  ECF No. 51, at 4.  Pepsi filed a brief opposing unsealing, *see* ECF No. 58, supported by an amicus brief filed by the Chamber of Commerce of the United States of America, *see* ECF No. 53.  The FTC did not file any opposition.

## LEGAL STANDARDS

The legal principles relevant to the present dispute are well established and undisputed. Both the common law and the First Amendment create a presumption of public access to certain court filings. *See, e.g., Lugosch*, 435 F.3d at 119-20. "These presumptions derive from the principle that it is essential that the people themselves have the ability to learn of, monitor, and respond to the actions of their representatives and their representative institutions." *United States v. Greenwood*, 145 F.4th 248, 254 (2d Cir. 2025) (internal quotation marks omitted).

With respect to the common law presumption, "the Second Circuit has established a three-part test for determining whether documents may be placed under seal." *United States v. Avenatti*, 550 F. Supp. 3d 36, 45 (S.D.N.Y. 2021) (internal quotation marks omitted). First, a court must determine whether the documents at issue are "judicial documents" to which the "presumption of access attaches." *Lugosch*, 435 F.3d at 119. A "judicial document" is a filed item that is "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo ("Amodeo I")*, 44 F.3d 141, 145 (2d Cir. 1995). "A document is . . . relevant to the performance of the judicial function if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (internal quotation marks omitted).

Second, the court "must determine the weight of that presumption," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted). "The weight of the common law presumption is strongest for

matters that directly affect an adjudication." *Avenatti*, 550 F. Supp. at 45 (internal quotation marks omitted). "Finally, . . . the court must balance competing considerations," including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure," against the presumption. *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). Any sealing or redaction of a judicial document must be "narrowly tailored" to serve the interest that justifies it. *Id.* at 120.

When it applies, the First Amendment presumption "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption." *Id.* at 126; *see also id.* at 124. The Second Circuit has "articulated two different approaches for determining" whether the First Amendment presumption applies. *Id.* at 120. The first considers "experience and logic" — that is, "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (internal quotation marks omitted). The second approach considers "whether the documents at issue are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (internal quotation marks omitted). If "the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

## DISCUSSION

Pepsi and its amicus, the Chamber of Commerce, largely defend the extensive redactions in the FTC's Complaint on the theory that strong private interests overcome the purportedly weak common law presumption of access at issue here. *See* ECF No. 58 ("Def.'s Mem."), at 5-

5

12; ECF No. 53-1 ("Chamber Amicus Br."), at 4-12.  In the alternative, Pepsi requests that the

Court seal particular categories of information that it contends are competitively sensitive.  *See*

Def.'s Mem. 12-16.  Neither Pepsi nor its amicus specifically addresses whether the First

Amendment presumption of public access also attaches.  The Court holds that, although most of

the Complaint must be unsealed, some narrow redactions are acceptable.

**A.  The Rights of Public Access Apply to the FTC's Complaint**

To begin, despite suggestions to the contrary in Pepsi's motion, *see, e.g.*, Def.'s Mem. 5

("Because The Court Took No Action On the Complaint, Public Access Is Not Presumed"), both

the common law and First Amendment presumptions of public access plainly apply to the FTC's

Complaint.  As to the former, the Second Circuit has squarely held that a complaint "is a judicial

document subject to [the common law] presumption of access."  *Bernstein v. Bernstein Litowitz*

*Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).  This is so "as of the time of the

[complaint's] filing" due to its "tendency to influence the court in the exercise of its Article III

powers."  *Giuffre v. Maxwell*, 146 F.4th 165, 178 (2d Cir. 2025).  And it is true even if the suit is

resolved without a "judicial determination of the pleadings' veracity and legal sufficiency," let

alone "without a judgment on the merits."  *Bernstein*, 814 F.3d at 140.  As the Circuit explained,

"'[a] complaint . . . is the cornerstone of every case, the very architecture of the lawsuit, and

access to the complaint is almost always necessary if the public is to understand a court's

decision.'  Moreover, in commencing an action and thus invoking the court's jurisdiction, the

parties' substantive legal rights and duties may be affected."  *Id.* (quoting *Fed. Trade Comm'n v.*

*Abbvie Prods. LLC,* 713 F.3d 54, 62 (11th Cir. 2013)).

Next, despite Pepsi's arguments to the contrary, *see, e.g.*, Def.'s Mem. 5-8, the weight of

the common law presumption in favor of public access is strong.  Once again, *Bernstein* all but

compels that conclusion.  There, as here, the district court had taken no meaningful action to adjudicate the merits of a sealed Complaint prior to dismissal.  There, as here too, a Part I judge had granted the plaintiff's motion to file the complaint under seal for a limited period, and the plaintiff had filed a notice of dismissal shortly before that period expired.  *See Bernstein*, 814 F.3d at 138-39.  Notwithstanding this posture, the Second Circuit "easily determine[d] that the weight of the [common law] presumption . . . [was] strong" due to the complaint's relevance "to the exercise of the Article III judicial power" and "utility . . . to those who monitor the work of the federal courts."  *Id.* at 142; *see also, e.g.*, *Giuffre*, 146 F.4th at 177 (observing, without limitation, that "pleadings . . . bear a particularly strong presumption of public access").  There is no basis to distinguish this binding holding here.

Pepsi contends that *Bernstein* does not directly "address[] the strength of the presumption of public access where, as here, a complaint is voluntarily withdrawn."  Def.'s Mem. 7.  But that is flat wrong: The plaintiff in *Bernstein* filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, *see* Notice of Dismissal, ECF No. 20, *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 14-CV-6867 (S.D.N.Y. Sept. 4, 2014), just as the FTC did here, *see* ECF No. 42.  And although the dismissal in *Bernstein* was due to a settlement and the dismissal here was due to the FTC's change of heart, Pepsi fails to explain why this distinction matters to the analysis.  To the extent Pepsi and its amicus suggest that this case is distinguishable on the theory that the circumstances surrounding the Complaint's withdrawal call into question the veracity of its allegations, *see, e.g.*, Def.'s Mem. 6-8; Chamber Amicus Br. 4-5, *Bernstein* makes plain that the potential falsity of a complaint's allegations has no bearing on the strength of the presumption of public access that attaches, *see Bernstein*, 814 F.3d at 142-44.  And to the extent that the Chamber of Commerce argues that the presumption of

public access is weak because "the portions of a complaint . . . relevant to the public monitoring function after a suit is . . . dismissed" remain accessible to the public, Chamber Amicus Br. at 5, it relates not to the weight of the presumption but to the proper scope of redactions, which the Court discusses below.  In short, the weight of the common law presumption is strong.[1]

Further, although Pepsi ignores the First Amendment, it too creates a presumption here. First, "[c]omplaints have historically been publicly accessible by default, even when they contain arguably sensitive information."  *Bernstein*, 814 F.3d at 141.  And second, "[l]ogical considerations also support a presumption of public access.  Public access to complaints allows the public to understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern."  *Id.*  For these reasons, the First Amendment presumption attaches to complaints under the "experience and logic" test.  *Id.*  As above, this is so even where the case is settled, *see id.*, and remains so in the event of voluntary dismissal.  Accordingly, in addition to a strong presumption of public access under the common law, "[a] qualified First Amendment right of access," which is "stronger than its common law . . . counterpart, also attaches" to the FTC's Complaint. *Greenwood*, 145 F.4th at 255 (internal quotation marks omitted).

---

[1]    The weight of the common law presumption here is arguably strong for another reason: Public access to the FTC's Complaint would allow the public to monitor the functions of the executive branch and better assess whether the FTC's reversal of course under the new Administration was justified.  *See Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."); *accord Sec. & Exch. Comm'n v. Waldman*, No. 17-CV-2088 (RMB), 2019 WL 1644965, at *2 (S.D.N.Y. Feb. 14, 2019); *see also Bernstein*, 814 F.3d at 143 (citing the public's "legitimate interest" in the allegations, "[w]hether true or not").  But the Court need not and does not rely on this rationale to conclude that the common law presumption is strong.

**B.  No Countervailing Factors or Higher Values Justify the Current Redactions**

In the face of these strong presumptions, Pepsi and its amicus offer three sets of justifications for maintaining the current redactions in full.  None suffices.

The first set of justifications concerns Pepsi's private interests in sealing.  In this regard, Pepsi first renews its challenges to the veracity of the Complaint, asserting that its "concededly misleading narrative" will "damage Pepsi's reputation."  Def.'s Mem. 9-10.  Yet, neither the purported unreliability of the agency's allegations, *see Bernstein*, 814 F.3d at 143, nor the prospect of "negative publicity," *Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943 (JMF), 2021 WL 5507034, at *21 (S.D.N.Y. Nov. 24, 2021), provides a basis for sealing.[2]  Pepsi also protests that ILSR seeks to leverage the Complaint to "assist its members in filing future litigation."  Def.'s Mem. 11.  But this rationale fares no better.  Without more, "[t]he fear of copycat lawsuits or embarrassing inquiries does not suffice to defeat the presumption of public access to judicial documents."  *Pers. Staffing Grp., LLC v. XL Ins. Am., Inc*., No. 22-CV-10259 (JPO), 2023 WL 4304688, at *3 (S.D.N.Y. June 30, 2023) (cleaned up); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").  And there is no indication of any improper motive in this case.  *Cf. Stafford v. Int'l Bus. Machines Corp.,* 78 F.4th 62, 71 (2d Cir. 2023) (upholding the denial of sealing motion where plaintiff's "apparent

---

[2]    On the first point, the Court also notes that, although a complaint "can . . . contain allegations that range from exaggerated to wholly fabricated," "attorneys and others submitting pleadings are under an obligation to ensure . . . that 'the factual contentions [made] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'"  *Bernstein*, 814 F.3d at 140, 143 (quoting Fed. R. Civ. P. 11(b)(3)).

purpose" was to "evade the confidentiality provision" in her arbitration agreement to advance related litigation).

Pepsi's second set of justifications focuses on the privacy interests of third-party companies whose identities or information appear in the redacted portions of the Complaint. *See* Def.'s Mem. 10-11; *see also* Chamber Amicus Br. 6-8. Although "the privacy interests of innocent third parties" generally "weigh heavily in a court's balancing equation," *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1050 (2d Cir. 1995) (alteration omitted), no such interests warrant the sweeping redactions at issue here. For one, the FTC's Complaint alleges that a publicly owned company offered illegal and anticompetitive sweetheart deals to one of its retailers to the detriment of the broader beverage industry and consumers, *see, e.g.*, Compl. ¶¶ 14, 17, 20, 63-67, 72-73, so it largely involves "conduct affecting a substantial portion of the public," as opposed to "traditionally [] private" matters, *Amodeo II*, 71 F.3d at 1051. For another, the identities of the third-party companies are "critical . . . to the public's ability to understand . . . the [FTC's] claims." *Olson v. Major League Baseball*, 29 F.4th 59, 93 (2d Cir. 2022). These factors lessen the force of any privacy interests at stake. It appears, moreover, that no significant injury to third parties will result from disclosure of the Complaint. Indeed, it bears noting that neither the FTC nor any of the materially affected third parties, who received notice from the agency of ILSR's Motion, *see* ECF No. 66, ¶¶ 2-4, filed any opposition to unsealing. Moreover, at least some of the redacted allegations, such as the identity of Pepsi's allegedly favored retailer, have already been the subject of significant media reporting. *See, e.g.*, Amelia Lucas, *FTC sues PepsiCo, Alleging Price Discrimination Is Raising Costs for Consumers*, CNBC (Jan. 17, 2025, 12:37 PM EST), www.cnbc.com/2025/01/17/ftc-sues-pepsico-over-price-

discrimination [https://perma.cc/W4DB-DC2W].  Against this backdrop, third-party privacy interests cannot overcome the strong presumptions of public access that attach to the Complaint.

The final set of proffered justifications for maintaining the full slate of redactions comes largely from the Chamber of Commerce, and it centers on the FTC.  *See* Chamber Amicus Br. 2, 5-6, 10-12.  Under the FTC Act, the Commission must treat certain information that it receives during its investigations as confidential.  *See* 15 U.S.C. § 57b-2(c), (f)(1).  Invoking these protections, the Chamber contends that the agency's decision to voluntarily dismiss the Complaint before "any substantive [judicial] action" "effectively returned the matter to the same nonpublic posture that existed before the complaint was filed."  Chamber Amicus Br. 2.  This argument fails twice over.  As an initial matter, the FTC Act "plainly exempts judicial proceedings like this one — 'in which the Commission is a party' — from the confidentiality of the statute," so the statutory protections do not counsel against full disclosure of the Complaint. *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 411 (1st Cir. 1987) (citation omitted) (quoting 15 U.S.C. § 57b-2(d)(1)(C)).[3]  Second, insofar as the Chamber's argument essentially takes issue with the Complaint's status as a judicial document to which public access is strongly presumed, it runs headlong into the precedent discussed above.

The Chamber also argues that sealing protects the FTC's interests in conducting efficient, cooperative investigations.  *See* Chamber Amicus Br. 10.  But there is no "danger of impairing law enforcement . . . efficiency" here.  *Amodeo II*, 71 F.3d at 1050.  Since the FTC statute makes it clear that confidentiality in agency investigations does not extend to court proceedings, unsealing can hardly be said to upset cooperators' expectations of confidentiality or chill

---

[3]    "The only precondition [to this exemption] is that the information be 'relevant and material,'" *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411 (quoting 15 U.S.C. § 57b-2(d)(1)(C)), which, wisely, neither Pepsi nor its amicus meaningfully contests here.

cooperation. This is especially so where, as discussed below, competitively sensitive information regularly remains under seal. *See Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (noting that "commonly sealed[]" materials include "those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like" (internal quotation marks omitted)). Finally, the fact that neither the FTC nor any of the materially affected third parties have opposed unsealing belies any claim that disclosure is likely to hamper future investigations.

In short, Pepsi and its amicus have failed to proffer any "countervailing factors" or "higher values" that justify maintaining the current redactions in their entirety.

## C. Pepsi's Alternative Requests for Redaction

In the alternative, Pepsi asserts that redactions are warranted with respect to three categories of information in the Complaint: (1) "confidential negotiations," (2) "[c]ustomer-specific business strategies," and (3) "[i]nternal pricing and go-to-market plans." Def.'s Mem. 12-13. Pepsi contends that these redactions are warranted because these categories of information, if made public, would harm its "competitive standing." *Id*. at 12-15. They also, Pepsi insists, "implicate the privacy interests of third parties." *Id*. at 15-16.

To overcome the First Amendment right of access, however, Pepsi "must 'demonstrat[e] that closure is *essential* to preserve higher values and is *narrowly tailored* to serve that interest.'" *Bernstein*, 814 F.3d at 144 (emphasis added) (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings and conclusory assertions'" do not cut it. *Id*. (cleaned up). Measured against these standards, Pepsi's efforts largely fall short. The Court has already addressed and rejected Pepsi's arguments concerning reputational harm, *see* Def.'s Mem. 14, and the privacy interests of third parties, *see id*. at 12, 15. Beyond that, Pepsi offers little

12

more than "broad allegations of [competitive] harm," which fail to show that "disclosure would result in an injury sufficiently serious to warrant protection." *City of Providence v. BATS Glob. Mkts., Inc.,* No. 14-CV-2811 (JMF), 2022 WL 539438, at \*1 (S.D.N.Y. Feb. 23, 2022) (internal quotation marks omitted). These allegations certainly do not justify the broad swath of redactions to the core of the FTC's Complaint that Pepsi proposes. *See, e.g.*, *Diesel S.P.A. v. Diesel Power Gear, LLC*, No. 19-CV-09308 (JLR), 2023 WL 5713713, at \*2 (S.D.N.Y. Sept. 5, 2023) (observing that "courts are particularly skeptical of sealing information that is commercially sensitive where it is highly relevant to the dispute" (cleaned up)).

That said, the Court agrees that the likelihood of competitive harm and the prospect of confusion among Pepsi's business partners due to the incompleteness of certain information, *see* Def Mem. 14-15; *see also* ECF No. 59 ("Murray Decl."), ¶¶ 11, 18, 24, justify narrow redactions to specific information concerning Pepsi's pricing, internal metrics and projections, and marketing strategies, to wit portions of paragraphs 10, 15, 41, 49, 59, 60, and 61 in the Complaint. Upon the filing of this Opinion and Order, the Court will email to the parties a copy of the Complaint with the relevant portions marked. Absent a motion for a stay pending appeal, no later than **December 11, 2025**, (1) the FTC shall file a copy of its Complaint on the docket with only the redactions permitted by the Court; and (2) Pepsi shall publicly file the Declaration of Daniel Murray, *see* ECF No. 59, with any corresponding information redacted.

## CONCLUSION

In sum, for the reasons stated above, the Court holds that (1) the FTC's Complaint is a "judicial document" subject to the common law presumption in favor of public access and to the qualified First Amendment right of public access; (2) none of the justifications offered by Pepsi or its amicus sufficiently outweigh these presumptions so as to warrant maintaining the current

13

redactions in full; and (3) the competitively sensitive nature of certain information justifies narrower redactions to the Complaint. Accordingly, ILSR's motion to unseal is GRANTED in part and DENIED in part. As discussed, absent a motion for a stay pending appeal, no later than **December 11, 2025**, (1) the FTC shall file a copy of its Complaint on the docket with only the redactions permitted by the Court; and (2) Pepsi shall publicly file the Declaration of Daniel Murray, *see* ECF No. 59, with any corresponding information redacted.

The Court further concludes that there is no basis to keep any document in 25-MC-33 under seal — with the exception of the unredacted copy of the FTC's Complaint, ECF No. 1-4. Accordingly, the Clerk of Court is directed to unseal and publicly file all documents in 25-MC-33 **except for** ECF No. 1-4, which should remain sealed, and close that case.

SO ORDERED.

Dated: December 4, 2025
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

14