UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

FEDERAL TRADE COMMISSION,                              :
                                                       :
              Plaintiff,                               :
                                                       :
       v.                                              :        Case No. 1:25-cv-00664-JMF
                                                       :
PEPSICO, INC.,                                         :
                                                       :
              Defendant.                               :
                                                       :
------------------------------------------------------ X

**DECLARATION OF DANIEL MURRAY IN SUPPORT OF DEFENDANT'S
MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO UNSEAL**

     I, Daniel Murray, pursuant to 28 U.S.C. § 1746, hereby state and declare as follows under penalty of perjury:

     1.     I currently serve as Vice President of Revenue Growth Management, Pepsi Beverages U.S. ("Pepsi"). I submit this Declaration in support of Defendant's Memorandum of Law in Opposition to Motion to Unseal.

     2.     In my current role at Pepsi, I am responsible for overseeing and helping set our recommended retail pricing, promotion, and package architecture strategy for our beverages business in the United States. My team also supports our commercial sales organization in negotiations with our retail customers and setting recommended retail pricing in the marketplace.

     3.     I am familiar with the Federal Trade Commission's Complaint filed in the above-captioned matter, including the redacted portions of the Complaint filed under seal and the underlying business documents those redacted allegations refer to, reference, and/or quote from.

4.      I have been apprised that the Institute for Local Self-Reliance ("ILSR") has filed a Motion to Unseal seeking disclosure of the portions of the Complaint that the Commission filed under seal. I understand that this Declaration is in support of Pepsi's opposition to ILSR's Motion given the harm that unsealing would pose to Pepsi and its retail customers.

5.      I am aware that over the course of the Commission's two-year investigation, Pepsi produced voluminous internal records, communications, and sensitive data.

6.      I understand that Pepsi designated certain, sensitive portions of its document productions as highly confidential and that Pepsi did so where disclosure would risk harm to Pepsi's business strategy or to third parties whose confidential information was implicated.

7.      I have been apprised that Pepsi requests that the Court maintain the unredacted Complaint under seal in its entirety. In the alternative, Pepsi submits that sealing is appropriate at least for the following categories of sensitive commercial information: (1) confidential negotiations between Pepsi and its retail customers; (2) confidential, customer-specific business strategies and forward-looking plans; and (3) confidential pricing and go-to-market plans. Each of these categories includes highly sensitive and proprietary business information that could be misused in the hands of Pepsi's competitors and retail customers.

**<u>Customer Negotiations</u>**

8.      Included in the set of allegations ILSR seeks to unseal are references to and quotations from confidential negotiations between Pepsi and its retail customers regarding space agreements and pricing terms. These materials are held in strict confidence and are not shared beyond the parties to the relevant negotiations.

9.      Paragraph 10 of the Complaint quotes a confidential email exchange between Pepsi and Walmart wherein Pepsi explains the value it had provided to Walmart in an effort to win

further business. *See* Appendix. Likewise, paragraph 41 of the Complaint quotes from another confidential exchange between Pepsi and Walmart related to pricing negotiations and promotional strategy. *See id.* These negotiations were private discussions between Pepsi and Walmart regarding space negotiations, pricing, and other key commercial terms in the parties' ongoing business relationship.

10.    Pepsi would be at a disadvantage in future negotiations if its business strategy regarding the value Pepsi provides its retail customers and the strategy Pepsi employs in its negotiations with its customers were revealed to Pepsi's competitors and customers.

11.    Competitors would become aware of Pepsi's value proposition and could seek to use that information to more directly counter and undermine Pepsi's competitive position. And customers would be able to enter future Pepsi negotiations with the Pepsi playbook in hand.

12.    Disclosure would also damage the trust Pepsi has earned in the marketplace by maintaining confidentiality with respect to its negotiations with retail customers. Releasing negotiation information to the public would shatter that trust and could subject Pepsi to retaliation from its retail customers.

13.    For example, paragraph 41 of the Complaint quotes a confidential negotiation between Pepsi and Walmart during which a promotion that one of Walmart's competitors ran was discussed, along with the pricing Pepsi had provided to Walmart. *See* Appendix. Unsealing the details of this confidential negotiation would expose the strategies and priorities Walmart holds confidential, and could potentially cause friction between Walmart and Pepsi. This could lead Walmart to de-prioritize, de-list, or completely shift away from Pepsi's products, thereby handing Pepsi's competitors an unearned advantage.

14.    Disclosure would also place Walmart at a competitive disadvantage, as its competitors would know the prices and terms Walmart is negotiating towards, and structure their own negotiations accordingly.

**Customer-Specific Internal Strategies**

15.    Also included in the set of materials ILSR seeks to unseal are allegations referencing or quoting internal customer-specific strategy documents and/or communications. These documents and communications are highly confidential materials that reflect aspects of Pepsi's internal deliberations and strategies related to individual customer negotiations and relationship development, as well as the strategies and priorities of Pepsi's third-party customers. They are held in strict confidence and are not shared outside of Pepsi's business.

16.    For example, paragraph 39 of the Complaint includes a quotation from an internal discussion concerning aspects of Pepsi's business strategy with Walmart. *See* Appendix. Paragraph 40 of the Complaint likewise includes quotes from an internal discussion wherein Pepsi employees discuss ongoing negotiations with Walmart, and as well as the details of confidential aspects of Pepsi's business relationship with Walmart. *Id.* Paragraphs 42–43 of the Complaint discuss confidential information regarding Walmart-specific strategies and how they will support future negotiations with Walmart. *Id.* Paragraphs 53–55 additionally include quotes from and references to internal strategies related to ongoing negotiations with Walmart, including specific discussion of Walmart's business priorities and the options Pepsi was then considering to help increase its volume of business with Walmart. *Id.*

17.    While these allegations by themselves are in large part misleading due to missing context, Pepsi would be at a disadvantage if this type of internal client-specific information—

including aspects of Pepsi's commercial strategy with respect to certain retail customers—were revealed to competitors and customers.

18.    Competitors would be able to leverage these materials to win business from Pepsi. For example, a competitor could leverage the detailed information in paragraphs 42 and 43 of the Complaint to disparage Pepsi in its own negotiations with Walmart, and also structure its approach to win Walmart's business by using the confidential framework Pepsi has developed for its negotiations with Walmart to its advantage. *See* Appendix.

19.    Pepsi's competitors would also be less incentivized to cut prices in an effort to win business away from Pepsi. Given access to Pepsi's internal prices and strategies, Pepsi's competitors would no longer need to cut prices deeper for fear of losing business; they would already know where Pepsi is willing to price, and they would ensure they do not over-discount. For example, paragraph 54 of the Complaint discloses confidential details regarding Pepsi's promotional and pricing strategies with Walmart (*see* Appendix), which a competitor could use to inform its negotiations with Walmart to ensure the competitor does not offer deeper-than-necessary discounts.

20.    Unsealing these materials likewise risks damage to Pepsi's relationship with its customers, thereby harming Pepsi's competitive standing. These confidential materials reflect dynamic considerations related to Pepsi's individual customers, including requests and priorities these customers relayed to Pepsi in confidence, as well as their confidential business strategies. For example, paragraphs 63–64 and 66 of the Complaint refer to dozens of Pepsi's retail customers, including Albertson's, Kroger, Raley's, Walgreen's, Target, Dollar General, and Dollar Tree, as the 'Disfavored Retailers,' and discuss aspects of their retail operations and business relationships with Pepsi—all without the context necessary for those customers to understand how their

sensitive information is implicated, or to weigh the accuracy of the allegations levied. *See* Appendix. Disclosure of those confidential materials could strain Pepsi's relationships with those customers and could lead those customers to pull Pepsi products or otherwise shift their business to Pepsi's competitors.

21.    Pepsi's retail customers would also be harmed by the release of Pepsi's customer-specific internal strategy information to the competitors of those retail customers. For example, exposing the confidential details in paragraph 54 of the Complaint to Walmart's competitors would give those competitors insight into Walmart's promotion strategy, which those competitors could then leverage to their competitive advantage. *See* Appendix.

**Internal Pricing and Go-to-Market Plans**

22.    ILSR also seeks to unseal allegations reflecting or quoting from Pepsi's internal general pricing and go-to-market strategies. These materials include confidential, internal discussions regarding delivery, space negotiations, marketing strategy, pricing, and cost information, as well as the action items arising from those discussions and Pepsi's strategies for taking its products to market across the various retail channels.

23.    Paragraphs 51–53 of the Complaint are examples of the sensitive information that falls in this category, as they discuss confidential internal discussions related to Pepsi's pricing and promotional architecture across the grocery channel and in particular geographic zones such as the Richmond-Raleigh-CLT corridor. *See* Appendix. The allegations also quote from confidential strategy documents about Pepsi's internal "Pricing Council" and the sensitive discussions that the Pricing Council undertakes relating to pricing and promotions. *Id.* Additionally, certain of these allegations reference or quote from internal pricing and/or cost data

that is highly confidential and competitively sensitive, such as in paragraph 15 of the Complaint. *See id.* These materials are held in strict confidence and are not shared outside of Pepsi's business.

24.    Unsealing these materials would place Pepsi at a competitive disadvantage. While devoid of key context and misleadingly framed in the Complaint, these materials reflect internal strategies that impact and influence Pepsi's overall go-to-market strategy, and often reflect how Pepsi prices its products and approaches negotiations across the various retail channels.

25.    Disclosing these materials to Pepsi's competitors and retail customers could undercut Pepsi's ability to win business across all channels and hamper Pepsi's effectiveness in negotiations. For example, if disclosed, Pepsi's competitors would be able to leverage this information to anticipate and undercut Pepsi's efforts to win business, placing Pepsi at a competitive disadvantage.

26.    These concerns are further amplified by the cherry-picked nature of the materials incorporated in the Commission's Complaint. For example, paragraphs 57–59 of the Complaint, in an effort to support the former Commission-majority's narrative, mischaracterize Pepsi's internal efforts to ensure fairness across all retail channels as an effort to favor Walmart. *See* Appendix.

27.    Releasing these misleading allegations to the public would harm Pepsi's standing with customers, as those customers would lack the context to accurately judge for themselves how Pepsi's internal processes operate. This could strain Pepsi's retail business relationships and further impact Pepsi's competitive standing as a result, as these customers could pull business from Pepsi or otherwise de-prioritize Pepsi products in their stores.

28.    Pepsi's retail customers could also be negatively impacted by the disclosure of this information, as their confidential business details and priorities are often discussed within Pepsi's

larger pricing and go-to-market strategies. These customers have an expectation that those discussions will remain confidential, and they would be unnecessarily harmed should those discussions be revealed to their competitors.

29.    Disclosing the confidential details of the Complaint would also exacerbate the harm that the Complaint's filing has already caused to Pepsi's business interests. For example, Pepsi's retail customers would see in paragraph 16 of the unredacted Complaint that Pepsi allegedly provides Walmart with price "monitoring and policing services" that Pepsi denies to other customers on proportionally equal terms. *See* Appendix. This allegation is wrong. Pepsi does not provide any such service—or anything remotely like it—to Walmart or any other customer. Disclosure of this false allegation would serve only to confuse and anger Pepsi's customers, magnifying the harm already caused by the filing of the Complaint.

30.    In sum, the strain on the broader omnichannel commercial relationships caused by exposing inflammatory and incorrect assertions would take considerable time to mend, leaving Pepsi's overall standing and customer relationships damaged.

Executed this 15th day of August, 2025, in Chicago, Illinois.

I declare under penalty of perjury that the foregoing is true and correct.

Daniel Murray